IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ELMER SPRAGUE, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>HOUSEHOLD INTERNATIONAL, et al., )<br>)<br>Defendants. ) | Case No. 04-0106-CV-W-NKL |

**ORDER**

Pending before the Court are the Defendants' Motions to Compel Arbitration [Docs. 45 and 48]. Also pending is a Joint Motion to Amend the Scheduling Order [Doc. 102], and the Plaintiffs' Motion to Amend their Complaint [Doc. 106.] For the reasons stated below, the Court finds that the arbitration agreement is enforceable, except for the cost-splitting and confidentiality provisions, which will be severed. Accordingly, the motions to compel arbitration will be granted, and the other motions will be denied as moot.

**I.    Background**

The claims set forth in the Plaintiffs' Second Amended Complaint include alleged violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"); the Truth in Lending Act, 15 U.S.C. 1602 *et seq.* ("TILA"); the Home Ownership Equity Protection Act, 15 U.S.C. § 1635, 1639 *et seq.* ("HOEPA"); the

1

Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq.* ("MMPA"); as well as common law fraud, negligent misrepresentation, rescission/reformation, and unjust enrichment. The Plaintiffs allege that Household,[1] in addition to performing other loan related services, solicited and sold certain residential real estate secured loans to them. The Plaintiffs further allege that the IRE Defendants,[2] who used Household employees to conduct loan closings, charged the Plaintiffs fees for services they did not perform.

Household provided the Plaintiffs with a standardized form of an arbitration agreement that Household drafted.[3] (Def. Ex. G & H [attached to Doc. 46].) The Arbitration Rider attached to the agreement provides in pertinent part:

> This Arbitration Rider is signed as part of your Agreement with Lender and is made part of that Agreement. By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute, or controversy . . . arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules of procedures of the arbitration administrator selected at the time the

---

[1] "Household" refers to Defendants Household International, Inc.; Household Financial Corporation, Household Finance Corporation III, Household Realty Corporation, Household Servicing Limited Partnership, Beneficial Corporation, and Mortgage One Corporation d/b/a HFC Mortgage Corporation.

[2] The IRE Defendants include Integrated Real Estate Processing Inc., Integrated Real Estate Processing LP, Integrated Real Estate Solutions, and NREIS Holdings, LP.

[3] Plaintiff Freddie Lee Hyde claims that he is not in possession of a signed copy of the arbitration agreement, and that the Defendants have not yet provided him with such a copy. However, Hyde has not denied that he signed the same agreement as the other Plaintiffs, nor has he provided the Court with any reason to doubt that he did.

Claim is filed. The party initiating the arbitration proceeding shall have the right to select one of the following three arbitration administrators: the National Arbitration Forum ("NAF"), the American Arbitration Association ("AAA") or JAMS/Endispute ("JAMS").
. . . .
If you file a Claim, the filing costs shall be paid as follows: (a) Lender agrees to pay for the initial cost of the filing the Claim up to the maximum amount $100; (b) for the filing costs over $100, such additional cost shall be divided equally between us up to the amount charged by the arbitration administrator for a Claim equal to your loan amount; and (c) all costs over the amount charged by the arbitration administrator for a Claim equal to your loan amount shall be paid by you. The cost of up to one full day of arbitration hearings will be shared equally between us. Fees for hearings that exceed one day will be paid by the requesting party.
. . . .
The parties agree that the award shall be kept confidential.
. . . .
No class actions or joiner or consolidation of any Claim with the claim of any other person are permitted in arbitration without the written consent of you and us.
. . . .
No provision of, nor the exercise of any rights under this Arbitration Rider shall limit the right of any party during the pendency of any Claim, to seek and use ancillary or preliminary remedies, judicial or otherwise, for the purposes of realizing upon, preserving, protecting or foreclosing upon any property involved in any Claim or subject to the loan documents.
. . . .
**THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**

(Def. Ex. G [attached to Doc. 46]) (emphasis in original).

Pursuant to the terms of the Arbitration Rider, the Defendants have moved to refer the Plaintiffs' claims to arbitration and to dismiss this case without prejudice or to stay the balance of this suit pending completion of the arbitration proceeding.[4,5]

On June 22, 2004, this Court issued an order deferring ruling on the pending motions to compel arbitration so that the relevant factual issues could be explored more fully. In particular, the Court noted that the parties had not provided the Court with sufficient information to determine whether the arbitration forum would waive their fees. *See Dobbins v. Hawk's Enterprises*, 198 F.3d 715 (8th Cir. 1999) (failure to fully consider fee waiver procedures is grounds for remand). Now that the parties have explored this issue and have filed supplemental briefings and exhibits, the Court will consider the merits of the pending motions.

## II.     Discussion

A party may request arbitration of claims when parties have agreed in writing to an arbitration and one party has instead filed its claim in a court. 9 U.S.C. § 4. If the Court determines that the claims are referable to arbitration, the Court must stay the arbitral claims pending the arbitration. 9 U.S.C. § 3.

---

[4]On March 25, 2004, the Court granted the parties' Joint Motion and Stipulation for Partial Stay of Proceedings. (Teleconference Minutes [Doc. 51].) Accordingly, all representative or putative class claims in this case have been stayed. The only claims not stayed are the individual claims that the Plaintiffs assert in their own behalf.

[5]Plaintiffs Freddie Lee Hyde and Kelley S. Mattox were joined in this lawsuit after the Defendants had filed the Motion to Compel Arbitration. Because the parties have proceeded under the assumption that the motion applies to them (Pl. Response [Doc. 60], p. 2 n.1), the Court will do the same.

4

The federal courts recognize a strong national policy in favor of arbitration. The presumption is that an arbitration agreement will be enforced. *See Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001); *see also Dobbins v. Hawk's Enters.*, 198 F.3d 715, 717 (8th Cir. 1999) (courts recognize a "broad principle of enforceability" with respect to arbitration agreements) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 11 (1984)). Accordingly, "[a] dispute must be submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement." *Lyster*, 239 F.3d at 945.

The Plaintiffs do not dispute the fact that they signed an arbitration agreement. Nor do they dispute the fact that the loans at issue fall within the scope of and are subject to the arbitration agreement. Rather, the Plaintiffs claim that (1) the agreement is unconscionable and therefore unenforceable; and (2) the IRE Defendants are not parties to the agreement.

### A. Whether the Arbitration Agreement is Unconscionable

"Whether an arbitration agreement is valid is a matter of state contract law." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004) (citing *Lyster*, 239 F.3d at 946 (8th Cir. 2001). The Supreme Court has observed that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements . . . ." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

5

Missouri cases "give little guidance on the subject of unconscionability." *Bracey v. Monsanto Co.* 823 S.W.2d 946, 949 (Mo. 1992) (en banc). However, Missouri courts have noted that unconscionability has both a procedural and a substantive component. *World Enterprises, Inc. v. Midcoast Aviation Services, Inc*., 713 S.W.2d 606, 611 (Mo. Ct. App. 1986) (citation omitted).[6] "Substantive unconscionability refers to undue harshness in the contract terms themselves, whereas procedural unconscionability involves examination of the contract formation process, centering on the pressure exerted by the parties, the fine print of the contract, misrepresentation, or unequal bargaining position." *Bracey,* 823 S.W.2d at 952-53. Although a court will not find an arbitration agreement unconscionable unless both aspects of unconscionability are present, a court should balance the two aspects such that "if there exists gross procedural unconscionability then not much be needed by way of substantive unconscionability [and vice-versa]." *Funding Systems Leasing Corp. v. King Louie Int'l., Inc*., 597 S.W.2d 624,

---

[6]The Defendants argue that Missouri courts have made the distinction between procedural and substantive unconscionability only in cases involving the Uniform Commercial Code. However, the Defendants have not shown that the principles underlying the common law concept of unconscionability differ from those codified in the U.C.C. The Courts that have discussed the issue have concluded that the principles are largely the same and that it is proper to apply the U.C.C. to common law contract cases by way of analogy. *See Puget Sound Financial, L.L.C. v. Unisearch, Inc*., 47 P.3d 940, 946 (Wash. 2002) (recognizing that the "U.C.C. can be applied to common law contract analysis by analogy, especially when evaluating unconscionability.") (citation omitted); *Lewis v. Hertz Corp*., 181 A.D.2d 493, 495 (N.Y.A.D. 1992) (stating that the U.C.C.'s concept of unconscionability "is merely a codification of the common law doctrine of unconscionability."); *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749, 752 n.1 (W. Va. 1986) ("the common law concept of unconscionability is largely the same as that articulated in the Uniform Commercial Code.").

634 (Mo. Ct. App. 1979); *see also Bracey*, 823 S.W.2d at 953 ("it has been suggested that there must be a balancing between the substantive and procedural aspects, and that if there exists gross procedural unconscionability, then not much is needed by way of substantive unconscionability, and that the same 'sliding scale' be applied if there is great substantive unconscionability but little of a procedural nature.").

### 1. Procedural Unconscionability

The Defendants do not dispute that the Arbitration Rider is a contract of adhesion. Adhesion contracts, however, are not "inherently sinister and automatically unenforceable." *Hartland Computer Leasing Corp. v. Ins. Man, Inc.*, 770 S.W.2d 525, 527 (Mo. Ct. App. 1989); *see also Greenpoint Credit, L.L.C. v. Reynolds*, 2004 WL 2517930, *4 (Mo. Ct. App. 2004) ("Because the bulk of contracts signed in this country are form contracts . . . any rule automatically invalidating adhesion contracts would be 'completely unworkable.'") (quoting *Hartland Computer Leasing*, 770 S.W.2d at 527). Rather, an adhesive provision is unenforceable only if it fails to comport with the parties' reasonable expectations and is unexpected or unconscionably unfair. *Id.*

The Plaintiffs argue that the agreement to arbitrate is procedurally unconscionable because the Arbitration Rider is "inconspicuously . . . placed at the bottom of a large stack of legal documents given to borrowers for the first time at closing." (Pl. Suggestions in Opposition [Doc. 60], p. 11.) Because "[t]he principle behind the concept of unconscionability is the prevention of oppression and unfair surprise," "the fact that a clause is tucked away in fine print on the back side of the signature page may well lead to

'unfair surprise' and therein be unconscionable." *Oldham's Farm Sausage Co. v. Salco, Inc.*, 633 S.W.2d 177, 182 (Mo. Ct. App. 1982) (internal quotation marks omitted). In this case, the Plaintiffs signed the Arbitration Rider only a few inches below a boldface, uppercase paragraph that clearly proclaims that, by signing the agreement, the parties would be waiving their right to bring future claims before a court. Therefore, the placement of the arbitration rider does not render the agreement procedurally unconscionable.

However, the document itself is not the only consideration relevant to procedural unconscionability. Also relevant are the circumstances surrounding the "contract formation process," such as pressure exerted upon a party to enter into the contract. *Liberty Fin. Mgmt. Corp. v. Beneficial Data Processing Corp.*, 670 S.W.2d 40, 50 (Mo. Ct. App. 1984).

The evidence before the Court indicates that Household presented the Arbitration Rider to the Plaintiffs in circumstances that discouraged careful consideration and critical thinking, and that Household rushed the Plaintiffs through the process of signing the documents. The Spragues state that, during the first closing, "Household representatives rushed us through the signing of these documents at a deli in a grocery store." Similarly, Mattox claims that she was rushed through the signing of the documents in a fast food restaurant. (Mattox Affidavit [Doc. 63], p. 2.) Each of the Plaintiffs have submitted an affidavit indicating that Household rushed the borrower through the signing process and that the process took less than ten minutes in each instance, although the documents were

8

voluminous and had not been given to the Plaintiffs in advance. (Sprague Affidavit [Doc. 61], p. 2; Hyde Affidavit [Doc. 62], p. 2; Mattox Affidavit [Doc. 63], p. 2.) Mattox claims that a Household representative told her that "if [she] did not sign immediately, [she] would have to wait to get [her] money." (Pl. Suggestions in Opposition [Doc. 60], p. 11.) Because Household has not attempted to refute these allegations, the Court takes them as true.

Household's practices constitute indicia of procedural unconscionability. *See Roque v. Applied Materials, Inc.*, 2004 WL 1212110, *6 (D. Or. 2004) (arbitration provision procedurally unconscionable when party was rushed in signing it in a room full of hundreds of people); *see also Family Fin. Servs., Inc. v. Spencer*, 677 A.2d 479, 485 (Conn. Ct. App. 1996) (finding that contract was procedurally unconscionable, in part because the party was rushed in signing it).

### 2. Substantive Unconscionability

Under Missouri law, "[a] contract is substantively unconscionable if there is undue harshness in the terms of the contract." *Lyster*, 239 F.3d at 947 (quoting *Killion v. Bank Midwest, N.A.*, 987 S.W.2d 801, 810 (Mo. Ct. App. 1998)). The Plaintiffs argue that the arbitration agreement is substantively unconscionable because it requires the Plaintiffs to split arbitration fees, contains one-sided remedial provisions, prohibits class actions, and contains a one-sided confidentiality provision. In addition, the Plaintiffs argue that the agreement is unconscionable because Household has been banned from bringing certain

9

claims before the AAA due to the failure of Household's arbitration agreement to comply with the AAA's due process and fairness requirements.

### a. Remedial Provisions

Pursuant to the Arbitration Rider, either party may elect arbitration. However, in drafting the Arbitration Rider, Household carved out a broad exception to the arbitration requirement which preserves Household's right to seek judicial action to foreclose upon the Plaintiffs' property. The Plaintiffs argue that this exception is one-sided and, therefore, unconscionable.

However, the broad exception in the Arbitration Rider also preserves the Plaintiffs' right to "seek and use ancillary or preliminary remedies, judicial or otherwise, for the purposes of realizing upon, preserving, [or] protecting . . . any property involved in any Claim or subject to the loan documents." (Def. Ex. G [attached to Doc. 46].) Pursuant to that exception, the Plaintiffs could seek a judicial injunction against foreclosure. *See Dillow v. Household Int'l*, No. 03-CV-00084, slip op. at 7 (W.D. Va. Apr. 26, 2004) (Def Ex. 3). The Court concludes that the remedial provision is not so one-sided as to be unconscionable.

### b. Prohibition of Class Actions

Household argues that the class action provisions are irrelevant to this inquiry because the Plaintiffs, as a practical matter, cannot assert a class action because they opted out of a nationwide class action that disposed of similar claims. However, unconscionability is determined from the circumstances existing at the time of

10

Case 4:04-cv-00106-NKL   Document 148   Filed 06/15/05   Page 10 of 20

contracting. *In re Weinsaft's Estate*, 647 S.W.2d 179, 182 (Mo. Ct. App. 1983). Accordingly, the recent developments with the nationwide class action are irrelevant.

Although the Arbitration Rider's prohibition of class actions applies to both parties, the prohibition is one-sided in its practical effect. Companies such as Household rarely seek to sue a class of their customers. On the other hand, customers who have suffered the loss of a relatively small sum of money have little incentive to proceed individually against Household. The prohibition of class actions, including class actions in arbitration, operates not only to deprive many individual defendants of an effective remedy, but also to eliminate any disincentive for Household to avoid the kind of harmful behavior that would form the basis of a class action lawsuit. Accordingly, the prohibition of class actions "weighs heavily in favor of a finding of substantive unconscionability." *Luna v. Household Finance Corp. III*, 236 F. Supp.2d 1166, 1178-1179 (W.D. Wash. 2002); *see also Acorn v. Household Int'l*, 211 F. Supp.2d 1160, 1170-1171 (N.D. Cal. 2002).

### c. Household's Violation of the AAA's Requirements

In response to the Plaintiffs' inquiry regarding fee waivers, the AAA responded by letter dated September 23, 2004, that it would not administer any consumer-related claims involving Household because Household "has not complied with [the AAA's] requests in the past to abide by the Consumer Rules and/or Consumer Due Process Protocol." (Pl. Ex. A [attached to Doc. 101].) Because of Household's failure to comply with the

11

protocol and to pay fees when required to do so, Plaintiffs claim that the arbitration agreement should be declared unconscionable.

Household disagrees that it has been "banned" from the AAA, pointing out that it has several claims pending before the AAA. However, from the extensive briefing on this issue, it appears that on December 12, 2002, Household was notified by the AAA that "since [Household] has not complied with [AAA's] request to adhere to our policy regarding consumer claims, we must decline to administer any other consumer disputes involving this business." AAA's refusal to administer disputes involving Household was because Household refused to comply with the AAA's Supplementary Procedures for Consumer Related Disputes, including the assessment and payment of fees in consumer disputes, which limits the amount of fees that a consumer can be required to pay. It also appears that Household would not pay fees that had been assessed by the AAA. Whether this is characterized as a ban or not is only a matter of semantics. It is clear that, during the pendency of this dispute, the AAA would not provide a forum for Household's disputes because it would not follow the AAA's standards concerning fees.[7]

Nevertheless, the Court finds that Household's violation of the AAA's rules is insufficient to render the arbitration agreement unconscionable. As discussed above, the Court is permitted to consider only those facts existing at the time of contracting, and the record does not show that Household was banned at the time the arbitration agreement was executed. However, as discussed below, the Court finds that Household's violation

---

[7] It appears that Household has now agreed to abide by the AAA's rules and the AAA has indicated it would permit Household once again to arbitrate disputes in that forum.

12

of the AAA's rules amplifies the unconscionability of the Arbitration Rider's confidentiality provision and supports the Court's finding that the cost-splitting provision in the arbitration agreement is unconscionable.

### d. Confidentiality Provision

The Court finds that the confidentiality provision in Household's arbitration agreement is unconscionable. As other courts have concluded, the provision ensures that Household reaps the advantages of repeatedly appearing before the same group of arbitrators, while consumers do not. *See Luna*, 236 F. Supp. 2d at 1178-79; *see also Acorn*, 211 F. Supp. 2d at 1170-71. Although it appears that Household has had related disputes with consumers in the past, the Plaintiffs will not have access to the details of those proceedings--for example, to see how fees and waiver requests have been handled or to determine whether an agreement to arbitrate is even wise, given the track record of Household's success during arbitration. But for this litigation, Plaintiffs would never have known that Household could not arbitrate before the AAA, yet Household would have that information because of prior arbitrations with the AAA. In addition, Household has not explained why these confidentiality agreements provide any real benefit, much less a comparable benefit, to the consumer. As repeat players, Household is the obvious beneficiary of any attempt to obscure the process.

Given Household's history of exploiting its entitlement to confidentiality to prevent transparency of the process, the Court finds that the confidentiality provision is one-sided, unduly harsh, and thus unconscionable.

13

### e. Cost-Splitting Provision

The Plaintiffs argue that the Arbitration Rider's cost-splitting provision renders the Arbitration Rider unconscionable. "A fee-splitting arrangement may be unconscionable if information specific to the circumstances indicates that fees are cost-prohibitive and preclude the vindication of statutory rights in an arbitral forum." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1053-1054 (8th Cir. 2004) (applying Iowa law, but citing *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 90 (2000)). "The burden of showing that arbitrators' fees will be cost-prohibitive falls on the party seeking to avoid arbitration." *Id.* Although there is no established quantum of proof necessary to meet that burden, the party seeking to avoid arbitration must show "more than just a hypothetical inability to pay." *Id.* "The party seeking to avoid arbitration should present specific evidence of likely arbitrators' fees and its financial ability to pay those fees so that the court can determine whether the arbitral forum is accessible to the party." *Id.*

During a teleconference with the parties on July 20, 2004, Household argued that the Plaintiffs would not be responsible for paying arbitration fees due to a contingency fee arrangement with their counsel. When the Plaintiffs denied that allegation, the Court ordered the Plaintiffs to submit their fee agreement under seal for *in camera* inspection. After reviewing that agreement, the Court determined that the agreement would require the Plaintiffs to bear all costs of arbitration, including the arbitration fees.

The Plaintiffs claim that the cost-splitting provisions of the rider would require them to pay at least $4,195 in arbitration costs. (Pl. Suggestions in Opposition [Doc. 60],

14

pp. 5-6.)  The Plaintiffs have stated in their affidavits that they are unable to pay such costs.  (Affidavits [Docs. 61-63, ], p. 3.)  The Defendants reply that the arbitration bodies allow for "fee-shifting" and could waive the fees in whole or in part.  On July 14, 2004, in response to this Court's order of June 22, 2004, the Plaintiffs sent a letter to each of the three arbitration forums inquiring as to whether the forums would grant either a full or partial fee waiver.  (Pl. Ex. B [attached to Doc 91].)

The NAF was the only forum that responded specifically to the request for fee waiver.  By letter dated July 29, 2004, the NAF replied that it could not determine whether a fee waiver would be granted until the claims were referred to arbitration. However, the NAF stated that, if the claims were resolved with a "Document Hearing," which, according to the NAF, is likely to be appropriate in this case, Household would pay the costs of that hearing.  The Plaintiffs' total cost of a "Document Hearing" would be only $70.

However, there is no evidence, other than NAF's speculative letter, indicating that the proposed arbitration would involve only a "Document Hearing."  In fact, the fairly complex nature of this case, that includes a misrepresentation allegation and fraud, strongly suggests that this dispute could not be fairly resolved by a document review.[8]

---

[8]The fact that the NAF was willing to state that it is likely that only a document review is necessary in a case involving fraud and misrepresentation is further support for Plaintiffs' allegation that the NAF is biased in favor of financial institutions.  *See, e.g.*, Jeffrey W. Stempel, *Arbitration, Unconscionability, and Equilibrium: the Return of Unconscionability Analysis as a Counterweight to Arbitration Formalism*, 19 Ohio St. J. on Disp. Resol. 757 n.289 (2004) (noting that First USA Bank had prevailed in 19,618 cases before the NAF, while First USA credit card members had prevailed in only 87 cases—a success rate of 99.6% for the financial institution).

15

Furthermore, in contrast, neither JAMS nor AAA has responded to the Plaintiffs' inquiry or provided the Plaintiffs with a cost estimate. Therefore, the Court is not persuaded that the cost of arbitration would be only $70.

Instead, the Court finds that it is more likely than not that arbitration would cost at a minimum $4,195, as the Plaintiffs have claimed and their affidavit of poverty is not contested even though the Court offered Household an opportunity to do discovery on this issue. Although Household claims that Plaintiffs have failed to prove they will not get a waiver, Plaintiffs have done everything logically possible. If this is insufficient, then the Supreme Court's safety net constructed in *Green Tea* is illusory. The Court finds that the parties' arbitration agreement in this case would result in the Plaintiffs being "saddled with prohibitive costs." *See Green Tree Financial Corp.*, 531 U.S. at 81. Accordingly, the Court finds that the cost-splitting provision is unconscionable.

### 3. Severability

Having determined that the cost-splitting and confidentiality provisions are unconscionable, the Court proceeds to determine whether those provisions can be severed from the Arbitration Rider, such that the remainder of the Arbitration Rider is enforceable. "If an unenforceable term is not essential to the entire agreement, then the rest of the agreement may be enforced." *Swain*, 128 S.W.3d at 108. "Whether a contract is severable in this manner depends on the circumstances of the case and is largely a question of the parties' intent." *Id.*

16

Case 4:04-cv-00106-NKL   Document 148   Filed 06/15/05   Page 16 of 20

After consideration, the Court finds that neither the cost-splitting provision nor the confidentiality provision is essential to the entire agreement. *Cf. Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 683 (8th Cir. 2001) (en banc) (noting in dicta that cost-splitting provisions in an arbitration agreement would "in all likelihood" be severable). This conclusion is dependent on Household's agreement to pay the cost of arbitration–a representation made to the Court during a phone conference. Otherwise, by severing this provision, the arbitrator could still order Plaintiffs to pay all the costs, placing Plaintiffs in a worse position than if the cost-splitting agreement were not stricken as unconscionable. Therefore, if Household agrees to pay the cost of arbitration, the cost-splitting provision is severed. Otherwise, it is not, because its inclusion would tip the balance. Requiring the Plaintiffs to pay these costs would effectively deprive them of any forum.

### 4. Summary of Considerations

Determining whether an arbitration clause is unconscionable requires the Court to engage in a delicate balancing act. Therefore, it is no surprise that the three courts to have considered the precise arbitration clause at issue have reached different conclusions. *See Acorn*, 211 F. Supp. 2d 1160 (finding that the Arbitration Rider is substantively and procedurally unconscionable); *see also Luna*, 236 F. Supp. 2d 1166 (finding that the Arbitration Rider is substantively, but not procedurally, unconscionable); *Dillow v. Household Int'l Inc.*, Case No. 3:03CV00084 (W.D. Va) (finding that the Arbitration Rider is neither substantively nor procedurally unconscionable).

As discussed above, the arbitration agreement bears some indicia of both procedural and substantive unconscionability. However, such indicia is not sufficient to render the entire arbitration agreement unconscionable. The only indication of procedural unconscionability is that the Plaintiffs were rushed through the signing of the documents, and that some of the Plaintiffs signed the documents in locations not conducive of critical thinking. Weighing against these factors is the fact that the Plaintiffs signed the Arbitration Rider only a few inches below a boldface, uppercase paragraph that clearly proclaims that, by signing the agreement, the parties would be waiving their right to bring future claims before a court.

Absent the cost-splitting and confidentiality provisions, the only indication of substantive unconscionability is the fact that the Arbitration Rider prohibits class actions. That consideration is simply not sufficient to avoid arbitration; particularly, in this case where a class action is not an option. The Court concludes that the arbitration agreement, minus the cost-splitting and confidentiality provision, is enforceable so long as Household pays the cost of the arbitration forum.

### B. Application to the IRE Defendants

The Plaintiffs argue that the IRE Defendants may not benefit from arbitration because they are neither parties to the arbitration agreement nor agents of Household. However, the Plaintiffs alleged a different set of facts in their First Amended Complaint, where they stated that "[a]t all times discussed herein, each of the Defendants were agents

18

or joint venturers of each of the other Defendants, and in doing the acts alleged herein acted within the course [or] scope of such agency." (Doc. 10, p. 9 ¶ 36.)

The Plaintiffs now argue that "just by plaintiffs pleading agency does not thereby render it so." (Pl. Suggestions in Opposition [Doc. 60], p. 18 n.12.) However, it appears that the Plaintiffs' claims against the IRE Defendants are dependant upon the theory that the IRE Defendants were Household agents: the Plaintiffs have not moved to amend their Complaint to state that the IRE Defendants were not agents of Household, and their more recently filed Proposed Third Amended Complaint contains the same allegation of agency. (Pl. Motion to Amend [attached to Doc. 106 as Ex. A], p. 8 ¶ 34.) Based on the Plaintiffs' own theory of the case, the Court concludes that the IRE Defendants are entitled to have the claims arbitrated. *See Madden v. Ellspermann*, 813 S.W.2d 51, 53 (Mo. Ct. App. 1991) (non-signatory agent is entitled to arbitration when principal was party to arbitration agreement).

## III. Conclusion

Accordingly, it is hereby

ORDERED that the Defendants' Motions to Compel Arbitration [Docs. 45 and 48] are GRANTED. The provisions of the arbitration agreement, with the exception of the cost-splitting provision and the confidentiality provision, are enforceable. As a condition of this Order, Household is required to pay all costs of the arbitration. The Plaintiffs' claims against the Defendants are DISMISSED without prejudice. It is further

ORDERED that the parties' Joint Motion to Amend the Scheduling Order [Doc. 102] is DENIED as moot. It is further

ORDERED that the Plaintiffs' Motion to Amend their Complaint [Doc. 106] is DENIED as moot.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: June 15, 2005
Jefferson City, Missouri